IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TINA ALEXANDER, SHEILA ALEXIS,      §
EVELYN BAINES, SHAUNTAY             §
BENNINGS, TABITHA HENRY,           §
CHEYANNE JONES, ROSLYN JONES,       §
KENDRA WILLIAMS, KYSHIA WOODS,      §
ZACHARY BAYLOR, and TRACEY          §
KENNERLY,                           §
                                    §
     Plaintiffs,                    §        CIVIL ACTION NO. H-14-2947
                                    §
v.                                  §
                                    §
AMERIPRO FUNDING, INC., AMEGY       §
BANK NATIONAL ASSOCIATION, and      §
WELLS FARGO BANK, N.A.,             §
                                    §
     Defendants.                    §

MEMORANDUM & ORDER

Pending are Defendant Ameripro Funding, Inc.'s Motion to Dismiss (Document No. 59) and Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (Document No. 60).[1]  After carefully considering the motions, responses, replies,[2] and applicable law, the Court concludes as follows.

_____

[1] These motions supersede and incorporate Wells Fargo and Ameripro's earlier motions to dismiss Plaintiffs' Second Amended Complaint at Document Nos. 40 and 41, which are also pending, and which are DENIED as moot to the extent that they address Plaintiffs' earlier pleading.

[2] Defendant Ameripro's Motion for Leave to File Reply Brief (Document No. 62) is GRANTED, and its reply brief at Document No. 62-1 is deemed filed.

I. <u>Background</u>

Plaintiffs Tina Alexander ("Alexander"), Sheila Alexis ("Alexis"), Evelyn Baines ("Baines"), Shauntay Bennings ("Bennings"), Nyo Haygood ("Haygood"), Tabitha Henry ("Henry"), Cheyanne Jones ("C. Jones"), Roslyn Jones ("R. Jones"), Kendra Williams ("Williams"), Kyshia Woods ("Woods"), Zachary Baylor ("Baylor"), and Tracey Kennerly ("Kennerly" and collectively, "Plaintiffs") allege that Defendants Ameripro Funding, Inc. ("Ameripro"), Amegy Bank National Association ("Amegy"), and Wells Fargo Bank, N.A. ("Wells Fargo") violated the Equal Credit Opportunity Act ("ECOA") when they refused to consider Plaintiffs' public assistance benefits as income in evaluating Plaintiffs' applications for home mortgage loans.[3]

Alexander alleges that she applied for a mortgage loan with Ameripro during the summer of 2011.[4] Alexander alleges that Ameripro did not consider her Section 8 income during the mortgage loan application process, and informed her that "she would not qualify for a thirty year mortgage with the payments she wanted, and a house at a certain price level."[5] Alexander alleges that she

_____

[3] Document No. 55 (3d Am. Compl.). Plaintiffs did not seek leave to file their Third Amended Complaint, but Defendants have not objected to its filing, and it is therefore accepted as Plaintiffs' live pleading.

[4] <u>Id.</u> ¶ 82.

[5] <u>Id.</u> ¶ 84.

then applied for and received a mortgage loan without her Section 8 income being included in the mortgage application.[6]

Plaintiffs Alexander, Alexis, Baines, Bennings, Haygood, Henry, C. Jones, R. Jones, Williams, and Woods allege that they contacted Ameripro "during various months of the calendar years 2011 to and including 2014" to inquire about financing home loans.[7] These Plaintiffs each received Section 8 housing assistance and each alleges that his or her Section 8 income was not included in calculating income to determine if he or she qualified for a loan.[8] They allege that they were denied credit because Ameripro "claims it did not have an investor that would purchase a loan that allowed for their Section 8 income to be utilized," and that because their Section 8 income was not counted they were unable to receive the mortgage loans they desired, "forcing each Plaintiff to purchase a home that was less expensive from their desired home, in a less

---

[6] Id.

[7] Id. ¶¶ 61-63.  There is no allegation that Plaintiffs or any of them were acting together or in concert with one another in any of the transactions alleged.  The claims appear all to be individual claims of individual Plaintiffs acting independently, and who had no evident dealings with one another.  Their joinder in this one case appears to be based only on the fact that they all have the same lawyer, and may well be improper under Rule 20 of the Federal Rules of Civil Procedure.

[8] Id. ¶ 65.

3

desirable neighborhood and/or location, and in many cases, under less favorable terms."[9]

Additionally, Plaintiffs Alexander, C. Jones, Williams, and Woods allege that the loans they applied for with Ameripro from 2011 through 2013 were "processed using Defendant Wells Fargo Bank's lending guidelines since Defendant Ameripro Funding intended to sell this loan to Defendant Wells Fargo."[10]  These Plaintiffs allege that their Section 8 income was not considered, causing them to receive "less favorable mortgage terms and qualif[y] for a mortgage amount at a lesser amount" than if their Section 8 housing assistance had been considered.[11]

Plaintiff Baylor alleges that in approximately 2011, when he received social security disability payments and Section 8 income and had a down payment voucher for $30,000, he applied for a mortgage loan with Wells Fargo.[12]  Baylor alleges that Wells Fargo did not consider his public assistance income, and subsequently in 2012 denied Baylor's mortgage loan application.[13]  Baylor alleges that while he was waiting for a response, he was unable to live in his current home and moved to "an apartment which was in a

---

[9] Id. ¶ 69-70.

[10] Id. ¶ 82-93.

[11] Id.

[12] Id. ¶¶ 94-95.

[13] Id. ¶¶ 96-97.

dangerous area," and because of this, "his apartment was broken into and most of his possessions were stolen."[14]

Plaintiff Kennerly alleges that in early 2012 she applied for a mortgage loan with Wells Fargo while she was receiving Section 8 income and had a down payment voucher for $9,500 from Harris County Housing Authority.[15]  Kennerly alleges that neither her Section 8 income nor her down payment voucher was considered by Wells Fargo during her mortgage loan application process and her application was denied.[16]  Kennerly alleges that as a result of this she "obtained less favorable mortgage [loan] terms and qualified for a mortgage at a lesser amount than if her Section 8 income had been considered equally as non-public assistance income."[17]

Plaintiffs filed suit in state court, alleging that "Defendants['] conduct with regard to the Plaintiffs constitute one or more violations of the Equal Credit Opportunity Act 15 U.S.C. 1691."[18]  In their Third Amended Complaint, Plaintiffs allege that Defendants violated the ECOA when Defendants discriminated against Plaintiffs as home loan applicants "because all or part of each of

---

[14] Id. ¶¶ 99-100.

[15] Id. ¶¶ 102-103.

[16] Id. ¶¶ 104-107.

[17] Id. ¶ 109.

[18] Document No. 1-4 ¶ 22 (Pls.' Orig. Pet.).

the Plaintiff's income derives from public assistance programs."[19]
Ameripro and Wells Fargo now move to dismiss Plaintiffs' claims,
or, in the alternative, to sever any remaining claims under Rules
20 and 21.[20]

## II.   Legal Standard

Ameripro moves to dismiss Plaintiffs' Third Amended Complaint
under both Rule (12)(b)(1) and Rule 12(b)(6).[21]   Under Rule
12(b)(1), Ameripro challenges Plaintiffs' standing, arguing that
Plaintiffs are not aggrieved applicants within the meaning of the
ECOA because Plaintiffs fail to allege "that they were denied the
credit or terms that they applied for as a result of the alleged
discrimination."[22]   This argument challenges the existence of a
federal cause of action, and accordingly, Ameripro's motion is
properly considered as an attack on the merits under Rule 12(b)(6).
Williamson v. Tucker, 645 F.2d 404, 415 (5th Cir. 1981) ("Where the
defendant's challenge to the court's jurisdiction is also a
challenge to the existence of a federal cause of action, the proper
course of action for the district court (assuming that plaintiff's
federal claim is not immaterial and made solely for the purpose of

---

[19] Document No. 55 ¶ 40; *see* 15 U.S.C. § 1691(a)(2).

[20] Document Nos. 59, 60.

[21] Document No. 60.

[22] Document No. 41 at 7.

obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.").[23]

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* Harlow v. Fitzgerald, 102 S. Ct. 2727 (1982). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that

---

[23] The Fifth Circuit has explained that "[t]he basic reason for this rule is obvious. If federal jurisdiction turned on the *success* of a plaintiff's federal cause of action, no such case could ever be dismissed on the merits." Eubanks v. McCotter, 802 F.2d 790, 793 (5th Cir. 1986) (emphasis in original) (reversing district court's dismissal for lack of subject matter jurisdiction and remanding for decision on the merits where federal jurisdiction was intertwined with federal cause of action).

is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

## III.   Analysis

### A.   *Prima Facie* Case

The ECOA provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction . . . because all or part of the applicant's income derives from any public assistance program." 15 U.S.C. § 1691(a). In order to establish a *prima facie* claim of discrimination under the ECOA, each Plaintiff must allege that: (1) she is a member of a protected class; (2) she applied for and was qualified for the loan at issue; (3) she was rejected despite her qualifications; and (4) other similarly situated persons outside her protected class were given loans, or treated more

8

favorably than plaintiff in the application process. <u>Shiplet v. Veneman</u>, 620 F. Supp.2d 1203, 1232 (D. Mont. 2009), *aff'd*, 383 F. App'x 667 (9th Cir. 2010); <u>Errico v. Pacific Capital Bank, N.A.</u>, 753 F. Supp.2d 1034, 1044 (N.D. Cal. 2010); <u>Gross v. United States Small Bus. Admin.</u>, 669 F. Supp. 50, 53 (N.D.N.Y. 1987).[24]

There is relatively little case law interpreting the ECOA, and even less pertaining specifically to public assistance income discrimination under the ECOA.  Plaintiffs do not cite--and the Court is unaware of--any cases holding that declining to treat public assistance income as identical to income from every other source for purposes of assessing one's creditworthiness is a violation of the ECOA.  Instead, the statutory text expressly provides that creditors may consider the fact that an applicant's income derives from a public assistance program as a relevant factor in evaluating creditworthiness. *See* 15 U.S.C. § 1691(b) ("It shall not constitute discrimination for purposes of this subchapter for a creditor . . . (2) to make an inquiry . . . of whether the applicant's income derives from any public assistance program if such inquiry is for the purpose of determining the amount and probable continuance of income levels, credit history, or other pertinent element of credit-worthiness as provided in

---

[24] This accepted standard is derived from the <u>McDonnell Douglas</u> standard for Title VII disparate treatment claims. *See* <u>Shiplet</u>, 620 F. Supp. 2d at 1231 (ECOA claim may be properly considered under the framework established by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973)).

regulations of the Bureau.").[25]   Relatedly, no party has addressed or cited any authority explaining what it means to be a "similarly situated" applicant outside the protected class in the context of public assistance income discrimination.[26]   The statutory scheme

---

[25] The term "Bureau" refers to the Bureau of Consumer Financial Protection.  15 U.S.C. § 1691a(c).  The Bureau's ECOA regulations provide:

> (i) Except as permitted in this paragraph, a creditor shall not take into account . . . whether an applicant's income derives from any public assistance program.
>
> . . .
>
> (iii) In a judgmental system of evaluating creditworthiness, a creditor may consider . . . whether an applicant's income derives from any public assistance program only for the purpose of determining a pertinent element of creditworthiness.

12 C.F.R. § 1002.6(b)(2).  The regulations further provide:

> A creditor shall not discount or exclude from consideration the income of an applicant or the spouse of an applicant because of a prohibited basis . . . ; a creditor may consider the amount and probable continuance of any income in evaluating an applicant's creditworthiness.

Id. § 1002.6(b)(5).

[26] See Gross, 669 F. Supp. at 53 (listing fourth element of prima facie case as "[people outside plaintiff's protected class] of similar credit stature were given loans, or were treated more favorably than plaintiff in the application process") (emphasis added).  Unlike most of the other protected characteristics under the ECOA, public assistance income may sometimes have bearing on "the amount and probable continuance of income levels, credit history, or other pertinent element[s] of credit-worthiness," as Congress acknowledged in Section 1691(b)(2).  Cf. 12 C.F.R. § 1002.6(9) ("Except as otherwise permitted or required by law, a creditor shall not consider race, color, religion, national origin, or sex (or an applicant's or other person's decision not to provide the information) in any aspect of a credit transaction.").

itself, however, contemplates a non-discriminatory, balanced approach by lenders--proscribing as discrimination the rejection of applicants based on their income being comprised "in whole or in part" from public assistance, but concommitantly approving the lender's inquiry about the applicant's public assistance income for the purpose of determining the amount and probable continuance of income levels and assessing credit history and pertinent elements of creditworthiness.  Thus, one receiving public assistance income is protected from discrimination because of the *source* of her public assistance income, but she is not thereby *entitled* to the loan of her own choosing or to an exemption from the lender's commercial determination of her credit history, and the probable continuance of her income levels and creditworthiness for the loan sought.  A fair inference from the pleadings and briefs is that this is not a case where persons receiving public assistance income were denied credit.  Except for Plaintiff Baylor, who pleads he received his loan from another lender after being denied by Wells Fargo, all Plaintiffs with their public assistance income evidently received mortgage loans from one or the other of Defendants. Instead, it is a case about Plaintiffs who did not get as large a loan as they wanted for the purchase of a house as large or well located as they desired.

Ameripro and Wells Fargo argue that Plaintiffs' various ECOA claims should be dismissed because, among other things, the several

11

Plaintiffs fail to allege that they were qualified for the sizes of the loans that they were denied, and Plaintiffs' claims are too conclusory to state a claim.  Common experience teaches that to qualify for a mortgage loan, with or without public assistance income, one should have net assets and income sufficient to support a lender's reasonable business judgment that the borrower is able to repay the debt and interest thereon during the loan period, and timely to pay insurance premiums, ad valorem taxes, and upkeep on the mortgaged property that secures the debt.  Plaintiffs, however, allege no specific facts sufficient "to raise a right to relief above the speculative level," Iqbal, 129 S. Ct. at 1949, that any Plaintiff was qualified for but denied a specific mortgage loan for which he or she applied, and that other similarly situated applicants--except for not having public assistance income-- received the same or a comparable mortgage loan secured by the same or similar property.  Without pleading specific facts of such a nature, Plaintiffs have not stated a plausible *prima facie* claim of discrimination under the ECOA.  *See* Montano-Valdez v. Wells Fargo Bank, N.A., No. H-13-3078, 2014 WL 69886, at *2 (S.D. Tex. Jan. 8, 2014) (Rosenthal, J.) ("[ECOA Plaintiff] does not allege any specific facts showing that she qualified for the loan modification she sought, or that others who were similarly situated but outside her protected class received the loan she was denied.  Courts addressing motions to dismiss similar allegations have found

pleadings too conclusory and skeletal to proceed.") (collecting cases); <u>Vasquez v. Bank of America, N.A.</u>, No. 13-cv-02902-JST, 2013 WL 6001924, at *13 (N.D. Cal. Nov. 9, 2013) ("[ECOA Plaintiff] must also allege specific facts, not mere conclusory assertions, demonstrating that [plaintiff] was "qualified for credit."); <u>Bojorquez v. Wells Fargo Bank, N.A.</u>, No. 6:12-cv-2077-AA, 2013 WL 6055258, at *6 (D. Or. Nov. 7, 2013) ("[B]eyond merely concluding that they were 'refus[ed] the loan for which [they were] qualified,' plaintiffs do not. . . allege any facts demonstrating that they were, in fact, eligible for credit and nonetheless denied.") (dismissing ECOA claim).

B.   <u>Direct Evidence</u>

Plaintiffs answer that they "are not required to plead a prima facie case of discrimination" because they have pled direct evidence of discrimination.[27]   Drawing from its employment discrimination jurisprudence, the Fifth Circuit has found that a plaintiff may bypass the typical *prima facie* requirements for an ECOA claim when he alleges direct evidence of discrimination.  *See* <u>Moore v. U.S. Dep't of Agric.</u>, 55 F.3d 991, 995 (5th Cir. 1995) ("The agency concedes that its December 1989 letter to Larry Moore, wherein it stated that '[n]o whites' could qualify for SDA-designated properties, constitutes direct evidence of racial

---

[27] Document No. 48 at 7; Document No. 49 at 5.

discrimination.   As such, the Moores are entitled to bypass the McDonnell Douglas burden-shifting framework commonly applied in discrimination cases and proceed directly to the question of liability.") (citing Kendall v. Block, 821 F.2d 1142, 1145 (5th Cir. 1987) ("In the rare situation in which the evidence establishes that an employer openly discriminates against an individual it is not necessary to apply the mechanical formula of McDonnell Douglas to establish an inference of discrimination.")).

"Direct evidence is evidence which, if believed, proves the fact without inference or presumption." Brown v. East Miss. Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993); Church of Zion Christian Ctr., Inc. v. SouthTrust Bank of Alabama, No. CA 96-0922-MJ-C, 1997 WL 33644511, at *7 (S.D. Ala. July 31, 1997) ("A direct-evidence case requires the production of direct testimony of the creditors constituting explicit and unambiguous statements of hostility toward persons protected by ECOA, thus proving discrimination without inference or presumption.") (citing Brown, 989 F.2d at 861-62 (in Title VII suit, supervisor's "routine use of racial slurs constitutes direct evidence that racial animus was a motivating factor in the contested disciplinary decisions.")).

Plaintiffs have not alleged that any Defendant made "explicit and unambiguous statements of hostility" either toward them or other persons whose income derives in whole or in part from public

14

assistance income.  Plaintiffs contend in their briefs, however, that they have pled direct evidence of discrimination, namely, that "Plaintiffs were specifically told they could not qualify for the terms sought because they received at least part of their income from public assistance."[28]  Even if this language were found in Plaintiffs' Third Amended Complaint, *which it is not*, this generalization globally asserted with respect to the numerous named Plaintiffs, who separately applied for loans from different banks and at different times over a period of years, and who dealt with a variety of different bank employees, has no "factual content that allows the court to draw the reasonable inference that [any one or more of Defendant banks] is liable [to any specific one or more of ten named Plaintiffs] for the misconduct alleged," <u>Twombly</u>, 127 S. Ct. at 1974.  Plaintiffs' only specific allegation of any Defendant making such a statement is the allegation that "Amegy told Kendra Williams that she could not use Section 8 vouchers to qualify for a loan with Amegy."[29]  No Plaintiff makes any specific allegation

---

[28] Document No. 48 at 7; Document No. 49 at 5.

[29] Document No. 55 ¶ 52.  Plaintiffs allege that Williams contacted Amegy in late 2011 and in 1012 to inquire about financing a house at 3610 Liberty Square Trail in Fresno, Texas; that she communicated with Shirley Penn, Affordable Mortgage Loan Officer with Amegy, who requested that Williams provide information on the home related to taxes, insurance, and HOA; and that Amegy told her "that she could not have a mortgage because her debt to income ratio was too high to qualify and therefore Amegy denied her credit."  <u>Id.</u> ¶¶ 47-48, 50, 53.  This minimal level of detail surrounding the alleged statement purportedly constituting direct evidence of discrimination--which still does not include the amount

against either Ameripro or Wells Fargo--the moving Defendants--that either Ameripro or Wells Fargo stated to any specific Plaintiff that her public assistance income could not be considered in determining whether she qualified for a loan, or that this was the reason for denying to her any specific mortgage loan.[30]

Plaintiffs Alexander, Alexis, Baines, Bennings, Haygood, Henry, C. Jones, R. Jones, Williams, and Woods conclusorily allege that they "were denied the right to utilize [their Section 8] income in qualifying for a loan with Defendant AmeriPro Funding," and that Ameripro "denied credit and financing to [them] because it claims it did not have an investor that would purchase a loan that allowed for their Section 8 income to be utilized in calculating

_____

or terms of the loan sought--seems rather fulsome when compared to the other Plaintiffs' dearth of any factual allegations amounting to direct evidence of discrimination by either Ameripro or Wells Fargo.

[30] *See* Document No. 55.  Plaintiffs allege that "[w]hen Alexander was told that her Section 8 income would not qualify as income on her mortgage application, she was told she would not qualify for a thirty year mortgage with the payments she wanted, and a house at a certain price level." Id. ¶ 84.  Plaintiffs in their Third Amended Complaint still do not identify the price of the house she desired to buy, the amount of mortgage loan she requested, the interest rate and other terms of the loan sought, the monthly payments she proposed to pay on a 30-year mortgage, her credit history and other debts, and other non-discriminatory factors properly used to determine her creditworthiness for a loan of that size and, hence, whether her Section 8 income was sufficient to qualify for such a loan, or the identity of the person or bank officer who in that context told Alexander that her Section 8 income would not be considered.  Such a vague pleading states no plausible claim or direct evidence of the kind of discrimination proscribed by the ECOA.

the debt to income ratio and for qualifying purposes."[31]   These conclusory allegations--which are alleged as to all ten of these Plaintiffs without distinction and without identifying any particular statements made by Ameripro--are not direct evidence of discrimination under the ECOA.

Plaintiffs also allege that Wells Fargo has a publicly available policy stating that "Wells Fargo will not accept transactions including, but not limited to, the following: . . . FHA Section 8 loans."[32]   Plaintiffs allege that Baylor and Kennerly "were discriminated against by Wells Fargo's refusal to consider Section 8 income or other public assistance for consideration in its mortgage decisions on the same basis as non-public assistance income."[33]   However, Plaintiffs do not allege that Wells Fargo told Baylor or Kennerly that the rejection of their applications was related to their Section 8 income.   Especially in light of Plaintiffs' other allegations--that Wells Fargo considered Baylor's application for over a year before denying it, and "required two appraisals be done on Tracy Kennerly's application" before denying

---

[31] Id. ¶¶ 65, 69.  Plaintiffs Alexander, C. Jones, Williams, and Wood each also conclusorily allege that their Section 8 income "was not included for consideration as part of [their] mortgage application[s]."  Id. ¶¶ 83, 86, 89, 92.

[32] Id. ¶ 79.

[33] Id. ¶ 81.  Baylor and Kennerly are the only Plaintiffs who allege that they "applied for mortgage loans with Wells Fargo." Id.

it--and Plaintiffs' failure to allege that they were in fact qualified for the loans they sought or that Wells Fargo exhibited hostility or animus to Baylor or Kennerly based on their public assistance income--Wells Fargo's alleged policy does not constitute direct evidence proving without inference that Wells Fargo denied Baylor's and Kennerly's loan applications because of their public assistance income.[34] *See* Reilly v. TXU Corp., 271 F. App'x 375, 379 n.2 (5th Cir. 2008) ("If we must draw inferences from the evidence, it is circumstantial, not direct."); Jones v. Overnite Transp. Co., 212 F. App'x 268, 273-74 (5th Cir. 2006) (in Title VII case, supervisor's alleged comments four months before plaintiff's termination that he wanted to "get rid of all the blacks," "reveal a discriminatory motive on their face but lack the indicia of specificity and causation required to be direct evidence of race discrimination," because "[t]he need to infer or presume the causal connection means that the statements are not direct evidence of intentional race discrimination.").

Accordingly, Plaintiffs have not alleged facts constituting direct evidence of discrimination against any Plaintiff by Ameripro or Wells Fargo under the ECOA, and Plaintiffs are therefore not excused from the requirement at least to plead a *prima facie* case of discrimination under the ECOA.  Because they have failed to do

---

[34] Id. ¶¶ 97, 106.

18

so after multiple attempts, Plaintiffs' claims against Ameripro and Wells Fargo are dismissed.

C.    Leave to Amend

Plaintiffs request "in the event that the Court finds any of the plaintiffs' allegations are insufficiently pleaded, the Court could grant Plaintiffs leave to file more detailed allegations regarding any area the Court finds deficient."[35]  Leave to amend a complaint shall be "freely given when justice so requires."  FED. R. CIV. P. 15(a)(2).  However, leave to amend may be denied for such reasons as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing part by virtue of allowance of the amendment, [or] futility of amendment."  *See* Foman v. Davis, 83 S. Ct. 227, 230 (1962).  Plaintiffs have already amended their complaint three times and have failed to correct the above-noted deficiencies, which Defendants pointed out prior to Plaintiffs' most recent amendment.  Moreover, Plaintiffs provide no proposed Fourth Amended Complaint to remedy these deficiencies. Accordingly, Plaintiffs' request for leave to amend is denied.

---

[35] Document No. 48 at 10; Document No. 49 at 8.  Plaintiffs actually made this request before filing their Third Amended Complaint, but the Court infers from Plaintiffs' Response to the present motions to dismiss that Plaintiffs would ask to file yet another amended complaint.  *See* Document No. 61 at 2.

19

IV.  <u>Order</u>

For the foregoing reasons, it is ORDERED that Defendant Ameripro Funding, Inc.'s Motion to Dismiss (Document No. 59) and Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (Document No. 60) are GRANTED, and Plaintiffs' claims against Ameripro Funding, Inc. and Wells Fargo Bank, N.A. are DISMISSED with prejudice.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this 28th day of July, 2015.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

20